# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Tony Brown, individually and on behalf of all others similarly situated,

                  Plaintiff,

       - against -

Zamora Company USA, LLC,

                  Defendant

1:22-cv-02703

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     Zamora Company USA, LLC ("Defendant") sells super premium rum under the Don Papa brand ("Product").




2. The Product's front label describes it as a "Small Batch Rum" from "Mt. Kanlaon" in the Philippines, "Aged In Oak," on top of an image of a turn-of-the-century sugar farmer.

3. The side and back panel state:

This rum is first aged for up to 7 years in Oak Barrels in the foothills of MOUNT KANLAON before being blended to perfection.



With a Rich, smooth taste, and notes of vanilla and candied fruits, Don Papa is just perfect straight, on the rocks or in your favorite cocktail.

4. The representations are misleading because the Product is not rum as this spirit is defined by regulations and understood by consumers.

5. Rum is defined as the class of distilled spirits that are "distilled from the fermented juice of sugar cane, sugar cane syrup, sugar cane molasses, or other sugar cane by-products at less than 95 percent alcohol by volume (190° proof)," with the taste and attributes of rum, "bottled at not less than 40 percent alcohol by volume (80° proof)." 27 C.F.R. § 5.147(a).[1]

6. The Product does not qualify as rum due to the addition of ingredients such as glycerin, vanillin, caramel color and added sugar, which alter its class and type. 27 C.F.R. § 5.155.

7. The addition of these ingredients was concluded based on multiple independent laboratory analyses of the Product, which included but were not limited to hydrometers.

8. One report determined the Product contains 2.4 grams per liter of glycerin, 359 milligrams per liter of vanillin and between 25 and 29 grams per liter of sugar.

---

[1] This State has adopted identical federal regulations to those identified here.

9.     Glycerin is a colorless, odorless liquid with a sweetening power equal to 70% of glucose, without calories.

10.    Glycerin provides sweetness, viscosity and body to distilled spirits.

11.    Though the Product's black color is claimed to come from being treated in casks, this is questionable, given that "there [are] no 10 year whiskies with a black color like [the Product]."

12.    Though manufacturers are permitted to add coloring, flavoring, and blending materials to distilled spirits, they are required to disclose this unless an exception applies.

13.     Glycerin, vanillin, caramel color and added sugar are not essential components of rum. 27 C.F.R. § 5.155(a)(1).

14.    Glycerin, vanillin, caramel color and added sugar are not customarily employed in rum in accordance with established trade usage. 27 C.F.R. § 5.155(a)(1).

15.    Assuming these additives are not present at more than 2.5 percent by volume of the finished Product, they cause it to be an imitation rum, and require it be labeled this way. 27 C.F.R. § 5.155(c)(5).

16.    The addition of coloring and flavoring causes the Product to simulate the class of flavored rums because it conforms to the standard of identity for rum but for these additional ingredients. 27 C.F.R. § 5.151(a); 27 C.F.R. § 5.152(a)(1).

17.    While other countries have different laws, they have nonetheless required the Product to be labeled as "Rhum Vanille" instead of "Rum," due to these additives.

18.    According to world-renowned rum distiller Richard Seale, "the rum category is flooded with doctored rums and added sugars and added sherry masquerading as premium rum."

19.    This information has been confirmed by independent laboratory analyses and is also maintained in the records of Scandinavian governments.

3

20. The aging of rum is important to consumers.

21. The representation that the Product is "aged for up to 7 [or 10] years in Oak Barrels" is misleading.

22. Aging causes rum to develop a natural amber color by absorbing natural tannins in the wooden barrels.

23. The alcohol in the rum brings out the esters from the barrels, which results in an infusion of spiciness and oak tones, which become more pronounced with age.

24. Because the amount of time a rum is aged impacts quality, it is important to not misrepresent this attribute to consumers.

25. Statements of age must be based on the age of the youngest spirit, even when the final product has been blended with older ones.

26. While "aged for up to 7 years" is not a formal age statement, it creates a misleading impression because consumers will expect all the blended rums are very close to or equal to seven years, when they are not. 27 C.F.R. § 5.40(b); 27 C.F.R. § 5.42(a)(1).

27. The Product is a mix of younger and older rums, and the oldest is seven years old.

28. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

29. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

30. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

31. Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers.

32.     Had Plaintiff known the truth, he would not have bought the Product or would have paid less for it.

33.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $42.99 per 750 mL, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34.     Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36.     The Product has been sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for at least 10 years.

37.     Plaintiff Tony Brown is a citizen of Illinois.

38.     Defendant Zamora Company USA, LLC is a Delaware limited liability company with a principal place of business in Dallas, Dallas County, Texas.

39.     Upon information and belief, at least one member of Defendant is a citizen of a state different than Plaintiff.

40.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

41.     The Product is available to consumers from third-parties, which includes wine and

liquor stores, grocery or other stores which may be authorized to sell liquor, and from online retailers

42.     Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase, consumption, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

43.     Plaintiff Tony Brown is a citizen of Chicago, Cook County, Illinois.

44.     Defendant Zamora Company USA, LLC is a Delaware limited liability company with a principal place of business in Dallas, Texas, Dallas County.

45.     Defendant is a subsidiary of the Diego Zamora S.A., a Spanish multinational alcoholic beverage conglomerate.

46.     The company is known worldwide as the producer and distributor for the world's most premium and highest-shelf liquor brands.

47.     Zamora is active across all distilled spirit categories and one of the fastest growing companies in its industry.

48.     The Don Papa Rum brand is the leading Super Premium Rum ("SPR"), defined in part by price and market surveys.

49.     Don Papa's annual growth for the past six years has been in double digits.

50.     Don Papa is one of the few rums sourced from outside of the Western Hemisphere, in the Philippines.

51.     This origin is believed significant because the unique soil and climate of Negros Occidental island produces the highest quality sugar cane in the world, resulting in rum which is

noticeably sweeter and fruitier than anywhere else.

52. The person depicted on the label is Dionisio "Papa Isio" Magbuelas, a sugarcane farmer and a revolutionary leader who helped lead his people to freedom from Spanish rule in the late nineteenth century.

53. Plaintiff purchased the Product at locations including Fairplay Foods, 2323 W 111th St, Chicago, IL 60643, between February 15, 2022, and March 15, 2022, among other times.

54. Plaintiff believed and expected the Product was made only from sugar and/or molasses and was aged for the number of years indicated because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

55. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

56. Plaintiff bought the Product at or exceeding the above-referenced price.

57. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

58. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

59. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

60.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

61.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar premium rum products, because he is unsure whether those representations are truthful.

Class Allegations

62.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Virginia, Montana, Wyoming, Idaho, Alaska, West Virginia, Kansas, Nebraska, North Dakota, Iowa, Mississippi, Arkansas, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

63.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

64.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

65.    Plaintiff is an adequate representative because his interests do not conflict with other members.

66.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

67.    Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

68.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

69.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

70.     Plaintiff incorporates by reference all preceding paragraphs.

71.     Plaintiff believed the Product was made only from sugar and/or molasses and was aged for the number of years indicated.

72.     Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

73.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

74.     Plaintiff relied on the representations and omissions to believe the Product was made only from sugar and/or molasses and was aged for the number of years indicated.

75.      Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

76.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

77.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

78.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

79.    As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

80.    Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

81.    The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was made only from sugar and/or molasses and was aged for the number of years indicated.

82.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

83.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

84.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was made only from sugar and/or molasses and was aged for the number of years indicated.

85. Defendant's representations affirmed and promised that the Product was made only from sugar and/or molasses and was aged for the number of years indicated.

86. Defendant described the Product so Plaintiff believed it was made only from sugar and/or molasses and was aged for the number of years indicated, which became part of the basis of the bargain that it would conform to its affirmations and promises.

87. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

88. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

89. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

90. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

91. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

92. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

93. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

94. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was made only from sugar and/or molasses and was aged for the number of years indicated.

11

95.     The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was made only from sugar and/or molasses and was aged for the number of years indicated, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

96.     Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

97.     Defendant had a duty to truthfully represent the Product, which it breached.

98.     This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

99.     Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

100.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

101.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

102.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

103.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

104. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made only from sugar and/or molasses and was aged for the number of years indicated.

105. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

106. Defendant knew of the issues described here yet did not address them.

107. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

108. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory

claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 22, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

14